UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Regional International Corp. and Mead's Automotive, LLC, on behalf of themselves and all others similarly situated,<br><br>                  Plaintiffs,<br><br>    v.<br><br>Espar Inc. and Espar Products Inc.,<br><br>                  Defendants. | Case No.  1:15-cv-01798-JG-JO |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS REGIONAL INTERNATIONAL CORP. AND MEAD'S AUTOMOTIVE, LLC'S MOTION RE: APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL FOR INDIRECT-PURCHASER PLAINTIFFS**

## **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................1

II. BACKGROUND AND PROCEDURAL HISTORY................................................2

III. THE SCARPULLA FIRM AND COOPER & KIRKHAM ARE WELL QUALIFIED TO PERFORM THE DUTIES OF INTERIM CLASS COUNSEL AND FULLY SATISFY ALL RULE 23(g) CONSIDERATIONS ................................................................................................3

    A. The Proposed Interim Co-Lead Class Counsel for the Indirect-Purchaser Plaintiffs Have Taken the Lead in the Identification and Investigation of Potential Claims in this Litigation. .......................................5

    B. The Proposed Interim Co-Lead Class Counsel for the Indirect-Purchaser Plaintiffs Have Substantial Experience in Complex Litigation and Will Efficiently Prosecute this Matter ....................................7

    C. The Proposed Interim Co-Lead Class Counsel for the Indirect-Purchaser Plaintiffs Are Knowledgeable Concerning the Applicable Law ................................................................................................10

    D. The Proposed Interim Co-Lead Class Counsel for the Indirect-Purchaser Plaintiffs Have the Resources Necessary to Prosecute this Litigation ............................................................................12

IV. CONCLUSION.....................................................................................................12

## **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Coleman v. General Motors Acceptance Corp.*,
220 F.R.D. 64 (M.D. Tenn. 2004) ....................................................................................5

*Delre v. Perry,*
288 F.R.D. 241 (E.D.N.Y. 2012)..................................................................................1-2

*Donaldson v. Pharmacia Pension Plan*, No. 06-3-GPM,
2006 U.S. Dist. LEXIS 28607 (S.D. Ill., May 10, 2006)..................................................5

*In re HSBC Bank USA, N.A.,* 13 MDL No. 2451,
2013 U.S. Dist. LEXIS 102221 (E.D.N.Y. July 22, 2013)...............................................4

*In re LIBOR-Based Fin. Instruments Antitrust Litig.,* 11 MDL No. 2262,
2014 U.S. Dist. LEXIS 153634 (S.D.N.Y. Oct. 14, 2014) ..............................................5

## **Other Authorities**

Fed. R. Civ. P. 23(g) .................................................................................................*passim*

Fed. R. Civ. P. 23(g) advisory committee notes (2003 amendments) ..............................5

*Manual for Complex Litigation (Fourth)* § 10.221........................................................5, 9

*Report of the Third Circuit Task Force, Selection of Class Counsel*,
74 Temp. L. Rev. 689 (Winter 2001) ...............................................................................9

I.     INTRODUCTION

Plaintiffs Regional International Corp. and Mead's Automotive, LLC (collectively, "the *Regional* Action Plaintiffs") submit this memorandum of law in support of their motion to appoint the Law Offices of Francis O. Scarpulla ("Scarpulla Firm") and the firm of Cooper & Kirkham, P.C. ("Cooper & Kirkham") as Interim Co-Lead Class Counsel for the Indirect-Purchaser Plaintiffs in the pending cases involving anticompetitive activities in the after-market truck heater industry: *Raccoon Valley Transport Inc., et al. v. Espar, Inc., et al.*, No. 1:15-cv-01338-JG-JO (E.D.N.Y.) ("*Raccoon Valley*"), and *Regional International Corp., et al. v. Espar Inc., et al.*, No. 1:15-cv-01798-JG-JO (E.D.N.Y.) ("*Regional International*"), and any subsequently filed Indirect-Purchaser cases.[1]

As this Court knows from past experience, the timely appointment of Interim Class Counsel for the Indirect-Purchaser Plaintiffs will assist in the orderly adjudication of this complex litigation. Appointment will ensure that appropriate representatives for all levels of Indirect-Purchaser Plaintiffs are designated to establish an organization and framework for the conduct of pre-class certification discovery, the preliminary exploration of the issues, and early motion practice. Interim Class Counsel will, among other things, be in a position to engage in discussions with representatives of the United States Department of Justice ("DOJ") – which has an ongoing industry investigation – with Interim Class Counsel for the Direct-Purchaser Plaintiffs,[2] and counsel for the Espar Defendants. *See Delre v. Perry,* 288 F.R.D. 241, 247

---

[1]  The *Regional* Action Plaintiffs have also filed a motion to consolidate, in one master docket proceeding, these indirect-purchaser actions, the three other pending cases filed by plaintiffs who purchased directly from Espar Inc. or Espar Products Inc. (*Triple Cities Acquisition, LLC d/b/a/ Cook Brothers Truck Parts v. Espar Inc., et al.,* No. 1:15-cv-01343-JG-JO; *National Trucking Financial Reclamation Services, LLC v. Espar, Inc. et al.,* No.1-15-cv-02310-JG-JO; and *Trailer Craft Inc. v. Espar Inc., et al.,* No. 1:15-cv-02411-JG-VVP), and any subsequently filed cases.

[2]  There are currently pending two motions for the appointment of Interim Class Counsel for the Direct-Purchaser Plaintiffs.

(E.D.N.Y. 2012) ("designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities").

## II.     BACKGROUND AND PROCEDURAL HISTORY

This litigation arises from a conspiracy to fix the prices of after-market parking heaters sold for installation in commercial vehicles. Amended Class Action Complaint, Dkt. No. 16 ("Amend. Compl."), ¶ 1. The *Regional* Action Plaintiffs, like all other plaintiffs in these proceedings (both those who purchased parking heaters directly and indirectly), have alleged that Defendants Espar Inc., Espar Products Inc. ("Espar") and unnamed co-conspirators, all of whom manufactured parking heaters, engaged in a conspiracy to fix the prices of after-market commercial parking heaters from a date beginning on or before October 1, 2007, through at least December 31, 2012. *Id.*, ¶¶ 1, 3, 4, 15. A Department of Justice investigation into anticompetitive conduct in the market for parking heaters is ongoing; Defendant Espar Inc. recently pled guilty to one count of violating the Sherman Act. *Id.*, ¶¶ 5, 12, 62. Espar Inc. agreed to pay a criminal fine of $14,970,000. *Id.*, ¶ 65.

There are currently two actions, *Raccoon Valley* and *Regional International*, filed on behalf of Indirect-Purchaser Plaintiffs. Both contain allegations seeking injunctive relief under the federal antitrust laws on behalf of nationwide classes. *Raccoon Valley* Complaint, Dkt. 1, ¶ 24; Amend. Compl., ¶ 16. *Raccoon Valley* also contains allegations seeking damages on behalf of a class of residents of twenty (20) jurisdictions under "repealer" state antitrust and consumer protection laws. *Raccoon Valley* Complaint, ¶ 25. The monetary claims in *Regional International* are significantly broader. In addition to injunctive relief under federal law, the *Regional International* Plaintiffs are seeking equitable monetary relief on behalf of a putative nationwide class of indirect purchasers. Amend. Compl., ¶ 17. This putative class includes

hundreds of thousands of parking heater purchasers in "non-repealer" states who have no monetary claims in *Raccoon Valley*.[3] These allegations also provide an additional theory of monetary recovery, under federal law, to the indirect purchasers in the "repealer" states covered by the *Raccoon Valley* damage allegations. The *Regional International* action also includes damage claims under state law (alleged as subclass claims) for purchasers in thirty (30) "repealer" states, plus the District of Columbia. Amended Compl., ¶¶ 18-19. Finally, the *Regional International* action is broader in that, in addition to claims brought by a consumer of truck heaters like the plaintiffs in *Raccoon Valley* (i.e., Mead's Automotive, LLC), it includes claims brought by plaintiff Regional International Corp., who is a commercial vehicle reseller and purchased parking heaters for resale, either incorporated into a new or used vehicle, or as a stand-alone item for sale to customers who already own their vehicles.

### III. THE SCARPULLA FIRM AND COOPER & KIRKHAM ARE WELL QUALIFIED TO PERFORM THE DUTIES OF INTERIM CLASS COUNSEL AND FULLY SATISFY ALL RULE 23(g) CONSIDERATIONS

The Scarpulla Firm and Cooper & Kirkham are well qualified to serve as Interim Co-Lead Class Counsel. Both Francis Scarpulla and Josef Cooper each have over forty-five years experience as antitrust litigators in cases that have spanned Multi-District Litigation Panel Docket Numbers from 3 to 1827, established seminal legal precedents and recovered in excess of $3.5 billion for class members. Early cases include: *In re Plumbing Fixtures Litig.,* MDL No. 3 (E.D. Pa.); *In re Gypsum Wallboard Litig.,* MDL No. 14 (N.D. Cal.); *In re Sugar Industry Antitrust Litigation*, MDL No. 201 (N.D. Cal.) (Josef Cooper, Plaintiffs' Liaison Counsel); *In re Folding Carton Antitrust Litigation*, MDL No. 250 (N.D. Ill.); *In re Cement and Concrete Antitrust Litigation*, MDL No. 296 (D. Ariz.) (Josef Cooper, Co-Lead Counsel). Recently, Mr.

---

[3] "Non-repealer" and "repealer" states is the common designation used to differentiate between states whose antitrust laws follow the United States Supreme Court's decision in *Illinois Brick v. Illinois,* 431 U.S. 720 (1977), and those whose legislatures or courts allow indirect purchaser actions.

Scarpulla served as Co-Lead Counsel in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827 (N.D. Cal.) ("*LCDs*") (Recovery of $1.1 billion), as Lead Counsel in *In re Static Random Access Memory (SRAM) Antitrust Litig.*, MDL No. 1819 (N.D. Cal.) ("*SRAM*") (Recovery of $40 million) and as Liaison Counsel in *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, MDL No. 1486 (N.D. Cal.) ("*DRAM*") (Recovery of more than $310 million, appeal pending). Mr. Cooper serves as Co-Lead Counsel in the *DRAM* litigation and he, along with Tracy Kirkham of his firm, represented consumers in *Sullivan, et al. v. DB Investments, Inc., et al.*, No. 04-02819 SRC (D.N.J.), a class action brought on behalf of diamond purchasers that obtained a $272.5 million settlement, and resulted in the landmark *en banc* decision by the Third Circuit Court of Appeals that is repeatedly cited for its complete exploration of the law of settlement class certification. *Sullivan v. DB Invs., Inc.,* 667 F.3d 273 (3d Cir. 2011) (*en banc*), *cert. denied sub nom. Murray v. Sullivan,* 132 S. Ct. 1876 (2012).[4] In short, there are no lawyers actively practicing in the United States who have more experience or better qualifications than Mr. Scarpulla and Mr. Cooper.

Rule 23(g) provides that a Court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3); *In re HSBC Bank USA, N.A.*, 13 MDL No. 2451, 2013 U.S. Dist. LEXIS 102221, at *27 (E.D.N.Y. July 22, 2013). Therefore, the goal of this Court in considering who should be appointed Interim Class Counsel is to determine the attorneys who will best represent the interests of the putative class, and who will be able to prosecute this class action efficiently and

---

[4] A more complete list of the antitrust, securities litigation and other complex litigation cases in which these firms have assumed leadership roles are listed in Exhibits to the Declaration of Francis O. Scarpulla in Support of Plaintiffs Regional International Corp. and Mead's Automotive, LLC's Motion Re: Appointment of Interim Co-Lead Class Counsel for Indirect-Purchaser Plaintiffs, filed herewith, and the Declaration of Josef D. Cooper in Support of Plaintiffs Regional International Corp. and Mead's Automotive, LLC's Motion Re: Appointment of Interim Co-Lead Class Counsel for Indirect-Purchaser Plaintiffs, filed herewith.

economically. *See Coleman v. General Motors Acceptance Corp.*, 220 F.R.D. 64, 100 (M.D. Tenn. 2004); *see also Manual for Complex Litigation (Fourth)* § 10.221 ("the *Manual*"). Especially where there is more than one class action pending, "appointment of class counsel is necessary to protect the interests of class members." *Donaldson v. Pharmacia Pension Plan*, No. 06-3-GPM, 2006 U.S. Dist. LEXIS 28607, at *1 (S.D. Ill., May 10, 2006).

Rule 23(g) sets forth four factors to be considered when selecting Interim Class Counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law and the field at issue; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A); *In re LIBOR-Based Fin. Instruments Antitrust Litig.,* 11 MDL No. 2262, 2014 U.S. Dist. LEXIS 153634, at *71 (S.D.N.Y. Oct. 14, 2014) (considerations set out in Rule 23(g)(1)(A) which govern appointment of permanent class counsel once class is certified are "widely accepted to apply to the designation of interim class counsel as well"). No single factor is determinative; all factors should be considered. *See* Fed. R. Civ. P. 23 advisory committee notes (2003 amendments).

> A. **The Proposed Interim Co-Lead Class Counsel for the Indirect-Purchaser Plaintiffs Have Taken the Lead in the Identification and Investigation of Potential Claims in this Litigation.**

As demonstrated by the allegations of the *Regional International* Amended Complaint, the Scarpulla Firm and Cooper & Kirkham are fully conversant with the facts and legal issues in this case as a result of their pre-filing investigation. In addition, to aid them in understanding the workings of the truck heater market and the pricing of products through the relevant chain of distribution, they have retained a leading economist and other experts to study the market. *See*

5

Declaration of Francis O. Scarpulla in Support of Plaintiffs Regional International Corp. and Mead's Automotive, LLC's Motion Re: Appointment of Interim Co-Lead Counsel for Indirect-Purchaser Plaintiffs, ¶ 6 ("Scarpulla Decl. ¶ [No.]"), filed concurrently herewith. Moreover, that expert has provided counsel with a preliminary opinion on the subjects of class-wide impact and damages.

As a result of their pre-filing investigation, the Scarpulla Firm and Cooper & Kirkham identified and alleged several claims that were not asserted in the *Raccoon Valley* action:

- First, they have asserted a claim under federal law for equitable monetary relief, seeking disgorgement of unlawful or illegal profits, and requested that a nationwide class for this purpose be certified pursuant to Rule 23(b)(3). Amend. Compl., ¶ 17. *See United States of America v. Keyspan Corporation*, 763 F. Supp. 2d 633 (S.D.N.Y. 2011); *Oregon v. AU Optronics Corp. (In re TFT-LCD (Flat Panel) Antitrust Litig.),* MDL No. 1827, No. C 10-4346 SI, 2011 U.S. Dist. LEXIS 76562 (N.D. Cal. July 11, 2011). This claim goes well beyond the nationwide injunctive relief class requested in *Raccoon Valley*.

- Second, there are damage claims alleged in *Regional International* on behalf of subclasses of indirect purchasers in thirty (30) states, plus the District of Columbia, all of whom allow indirect purchaser recovery under their antitrust or consumer protection laws.[5] Amend. Compl., ¶¶ 18-19. In contrast, the *Raccoon Valley* action alleges damages claims on behalf of residents of only

---

[5] These are Alaska, Arizona, California, the District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin. Amend. Compl., ¶¶ 18-19.

nineteen (19) states, plus the District of Columbia. *Raccoon Valley* Complaint, ¶ 25.

- Third, counsel in *Regional International* recognized that the structure of the market for commercial vehicle parking heaters meant that significant indirect purchases during the conspiracy period were made by commercial vehicle dealers for installation into trucks and other vehicles prior to their initial sale to the public. The conspiracy period identified by the government investigation was also a time of the rapid proliferation of anti-idling laws and ordinances, which had the effect of eliminating the traditional means of keeping a vehicle warm by simply allowing the engine to run. Thus, to remain competitive, dealers needed to sell vehicles that were legally compliant, and therefore they needed to modify vehicles in inventory by purchasing and installing heaters pre-sale. Plaintiff Regional International Corp. is the only putative representative of this significant aspect of the market affected by the alleged conspiracy. In fact, it appears that the *Raccoon Valley* action is brought only on behalf of end-user purchasers. *Raccoon Valley* Complaint, ¶¶ 5-6.

**B. The Proposed Interim Co-Lead Class Counsel for the Indirect-Purchaser Plaintiffs Have Substantial Experience in Complex Litigation and Will Efficiently Prosecute this Matter.**

The Declarations of Francis Scarpulla and Josef Cooper establish that they each have more than sufficient experience in complex antitrust litigation to be appointed Interim Co-Lead Class Counsel. They each have held leadership roles in antitrust actions involving claims of indirect purchasers at multiple levels along a product's chain of distribution, beginning before

7

*Illinois Brick* was decided and continuing into the present in such actions as *Sullivan v. D.B. Investments, supra, DRAM Antitrust Litigation,* and the *TFT-LCD Flat Panel Antitrust Litigation*.

Many of the questions of law and fact that will shape discovery and pretrial motion practice, especially those relevant to establishing the existence, scope and effect of the alleged conspiracy, are common to all indirect purchasers (and indeed, to the direct purchasers, as well). This makes consolidation of all of the actions the most efficient means of ensuring that pretrial discovery, and to a less extent, motion practice, will occur simultaneously and be conducted in an efficient manner. The firms proposed for Co-Lead counsel bring experience in structuring committees of counsel to efficiently review documents and organize evidence in cases involving multiple millions of pages of documents. In particular, Tracy Kirkham, a named partner in Cooper & Kirkham, has over twenty-five years of experience in e-discovery issues and structures, having created in the late 1980's, what we believe to be the first document and evidence management systems that used scanned images, optical character reading and full-text search software for document selection and review. *See* Declaration of Josef D. Cooper in Support of Plaintiffs Regional International Corp. and Mead's Automotive, LLC's Motion Re: Appointment of Interim Co-Lead Counsel for Indirect-Purchaser Plaintiffs, ¶ 6 ("Cooper Decl. ¶ [No.]"), filed concurrently herewith. Since publication of an article discussing this system in "Taming Documents in Complex Litigation," 5 The Practical Litigator, No. 4, July 1994, Ms. Kirkham has been recognized as a leader in the area of electronic discovery and electronic document management in large commercial cases. She has lectured on the subject of computerized document management in litigation before the Association of Trial Lawyers of America and the American Bar Association, Young Lawyer's Division. She was the senior

attorney in charge of the indirect-purchaser plaintiffs' document production, review, evidence organization and deposition preparation in the *DRAM* Antitrust Litigation, where Mr. Cooper is Co-Lead Counsel, and performed the same role in the *LCD* litigation, where Mr. Scarpulla was Co-Lead Counsel.  Cooper Decl., ¶¶ 3 & Exh. 1, 6.

If the plaintiffs are successful in establishing defendants' liability for participating in a conspiracy to fix truck heater prices, and a monetary judgment is obtained either through litigation or settlement, issues will arise relevant to dividing and allocating this recovery among the various indirect purchasers along the chain of distribution.  Participation in cases such as *Sullivan* and *DRAM* in which these issues were resolved by litigation (*Sullivan*) and negotiation (*DRAM*) confirm the benefit of having a leadership structure that allows for separate counsel to advocate for different constituencies, whether or not they are divided into formal subclasses.  Scarpulla Decl., ¶ 4; Cooper Decl., ¶ 7.  A Co-Lead Counsel structure here will ensure that all relevant interests are fully represented, and any appearance of a conflict of interest is avoided.  See, *DRAM*, Scarpulla Decl., ¶ 4, Exh. B.

The *Manual* recognizes that there can be multiple lead counsel, liaison counsel and members of executive committees, particularly in complex cases where disparate interests need to be represented.  *See Manual* § 10.221.  The Third Circuit's Task Force Report on Selection of Class Counsel likewise states that a "court should be cognizant of the possibility that the class could benefit from the combined resources and expertise of a number of class counsel, especially in a complex case where the defendants are represented by a number of large and highly qualified law firms."  *Report of the Third Circuit Task Force, Selection of Class Counsel*, 74 Temp. L. Rev. 689, 770 (Winter 2001).  While this case does not at present involve a large number of defendants, each of the defendants here is a substantial corporation (with a parent

9

company headquartered in Germany). Further, counsel anticipate that several additional defendants will be joined, each of whom no doubt will be represented by a highly-qualified defense firm like that appearing on behalf of Espar. In addition, the amount of commerce involved in this litigation is relatively large and the number of potential class members in the putative Indirect-Purchaser Class is far greater than in the putative Direct-Purchaser Class. As such, it will require the examination and analysis of complex issues not present in the Direct-Purchaser action. Counsel for the Indirect-Purchaser Class will have to address issues of pass-through in proving the overcharges paid by indirect-purchasers and in allocating any recovery between resellers and end users.

Under these circumstances, precedent suggests that two firms with a proven track record of working harmoniously and efficiently together will be superior to a single firm attempting to adequately run this case alone. Indeed, it was considerations such as those delineated above that led the Court in *DRAM* to appoint four Co-Lead Counsel, as well as one Liaison Counsel, for the indirect-purchaser class. *See* Scarpulla Decl., ¶ 9, Exh. B.

### C. The Proposed Interim Co-Lead Class Counsel for the Indirect-Purchaser Plaintiffs Are Knowledgeable Concerning the Applicable Law.

Francis Scarpulla, proposed as one of the Co-Lead Counsel here, is a well-known and well-respected antitrust practitioner and is one of the country's most experienced prosecutors of indirect-purchaser antitrust class actions. He has participated in over 170 antitrust actions over the past 47-plus years. *See* Scarpulla Decl., ¶¶ 8, Exh. A, 12. On behalf of indirect-purchaser class members, Mr. Scarpulla has: (i) acted as sole or co-lead counsel in over 100 antitrust class actions in his career; (ii) successfully argued numerous class certification motions in federal and state courts; (iii) defeated numerous summary judgment motions; (iv) taken as sole or co-lead counsel, hundreds of depositions of defendants and third-party witnesses; (v) negotiated

settlements totaling billions of dollars for injured class members throughout the country; and (vi) tried six complex cases to juries. As stated above, in recent years, Mr. Scarpulla's firm was appointed by the Courts as Class Counsel or as Liaison Counsel for certified indirect-purchaser classes in *LCDs*, *SRAM* and *DRAM*. See Scarpulla Decl., ¶¶ 8-12, Exhs. A, B, C, and D.

Cooper & Kirkham is nationally recognized as experts in antitrust class action litigation. The firm has participated in the litigation of many of the nation's major cases that, in addition to recovering billions of dollars for class members, have added to the seminal precedent in this area of the law. Mr. Cooper began his career as a staff attorney for the Coordinating Committee on Multiple Litigation, the predecessor to the Judicial Panel on Multidistrict Litigation. As such, he participated in drafting both the legislation which created the MDL Panel and the first edition of the Manual on Complex Litigation. Cooper & Kirkham were the lead drafters of the petition for rehearing and subsequently, the briefing on rehearing *en banc* in *Sullivan*, a decision that is widely regarded as one of the most complete expositions extant of the law and policy underlying the settlement of antitrust class actions. See Cooper Decl., ¶¶ 2, 3 & Exh. 1. More recently, Ms. Kirkham, along with a representative of a committee of thirty-three state Attorneys General, provided substantial drafting assistance to the Honorable Charles B. Renfrew in preparing the three part, 295-page Special Master's Report covering the issues, *inter alia*, of nationwide class certification and the selection of notice procedures, and a plan of allocation and distribution of the settlement funds in the *DRAM* litigation. *Id.* at ¶ 5.

Collectively, these principals of the Scarpulla Firm and Cooper & Kirkham have almost 100 years of antitrust experience litigating under and shaping the antitrust laws. These firms have a depth of knowledge that will be available to the putative Indirect-Purchaser Class that cannot be equaled. These firms also have unparalleled records of success in handling antitrust

price-fixing lawsuits on a national basis, and their performance of their duties has never been criticized by any court.

    **D.  The Proposed Interim Co-Lead Class Counsel for the Indirect-Purchaser Plaintiffs Have the Resources Necessary to Prosecute this Litigation.**

  Together, the Scarpulla Firm and Cooper & Kirkham possess the experience to manage the expenditure of resources to ensure that the litigation is prosecuted in the most expeditious and cost-effective manner practicable. Further, they each have sufficient liquid assets, and are prepared, to advance the necessary costs of litigation. Scarpulla Decl., ¶ 7; Cooper Decl., ¶ 9.

## IV. CONCLUSION

  The Scarpulla Firm and Cooper & Kirkham have demonstrated the antitrust knowledge, experience, ability and financial resources to undertake the leadership of this action. They have investigated the facts giving rise to these cases, analyzed the after-market truck heater industry in light of the applicable law, and filed a complaint that encompasses all viable claims for recovery possessed by indirect-purchasers.

  They also bring to this litigation another area of expertise that, although not enumerated in Rule 23(g), is frequently central to the proper performance of the role of Lead Counsel. That is the ability to work collaboratively with other plaintiffs' counsel and cooperatively with counsel on the other side of the courtroom. To this end, Mr. Scarpulla sent an email to counsel in *Raccoon Valley* offering to host a discussion exploring ways that the plaintiff groups could cooperate moving forward. Scarpulla Decl., ¶ 13. To date there has been no response to Mr. Scarpulla's email. *Id.*, ¶ 13. Over the years, Messers. Scarpulla and Cooper have found that integrity and fairness in all dealings with counsel are critical to the ability to resolve cases promptly and efficiently.

In light of their significant credentials, experience, and resources, the Scarpulla Firm and Cooper & Kirkham are in a unique position to provide a great benefit to the putative class of Indirect-Purchaser Plaintiffs in this matter. Accordingly, for the foregoing reasons, they respectfully request that the Court appoint them as Interim Co-Lead Class Counsel for the Indirect-Purchaser Plaintiffs in this litigation.

Dated: May 15, 2015

Respectfully submitted,

By: /s/ Francis O. Scarpulla
Francis O. Scarpulla (*pro hac vice*)

LAW OFFICES OF FRANCIS O. SCARPULLA
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 788-7210
Facsimile: (415) 788-0706
Email: fos@scarpullalaw.com


By: /s/ Josef D. Cooper
Josef D. Cooper (*pro hac vice*)

Tracy R. Kirkham (*pro hac vice*)
John D. Bogdanov (*pro hac vice*)
COOPER & KIRKHAM, P.C.
357 Tehama Street, 2nd Floor
San Francisco, CA 94103
Telephone: (415) 788-3030
Facsimile: (415) 882-7040
E-mail: jdc@coopkirk.com
trk@coopkirk.com
jdb@coopkirk.com


Lawrence H. Schoenbach
LAW OFFICES OF
LAWRENCE H. SCHOENBACH, PLLC
The Trinity Building
111 Broadway, Suite 701
New York, New York 10006
Telephone: (212) 346-2400
Facsimile: (212) 937-3100

Email:  schoenbachlawoffice@att.net


Philip A. Cala
Attorney at Law
Furniture Mart Office Bldg
Suite 1000
Jamestown, NY 14701
Telephone:  (716)483-2252
Email:  artlaw@windstream.net

*Counsel for Plaintiffs Regional International Corp.
and Mead's Automotive, LLC*